## THE WM. E. GLADWISH.

### THE NEWBURGH.

(Circuit Court of Appeals, Second Circuit. June 27, 1913.)

#### No. 259.

COLLISION (§ 93*)—STEAM VESSELS CROSSING—STARBOARD HAND RULE.

A tug passing up the Hudson river held in fault for a collision with a ferryboat crossing on such a course as to make the tug the favored vessel under the starboard hand rule, on the ground that after giving the crossing signal she changed her course, in violation of article 21 of the Inland Rules (30 Stat. 96 [U. S. Comp. St. 1901, p. 2883]).

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. § 93.*]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by the West Shore Railroad Company, owner of the ferryboat Newburgh, against the steam tug William E. Gladwish, Elmer A. Keeler, claimant, with cross-libel. Decree for libelant, and claimant appeals. Affirmed.

D. L. Berier and James J. Macklin, both of New York City, for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (A. G. Thacher, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. Libel and cross-libel for collision. March 7, 1911 at 6:20 p. m. the ferryboat Newburgh left her slip at Weehawken, N. J., bound for Forty-Second street, N. Y. The tide was running strong ebb. At the same time the tug W. E. Gladwish was coming up the New York side of the river on a course, as her witnesses say, 300 to 400 feet off the pier line. When about 1,000 feet off the end of Pier 83 at the foot of West Forty-Third street, the ferry-

---

boat blew a signal of two whistles to the tug, then about off Thirty-Ninth street, which the witnesses from the tug say was not heard. The tug then blew a signal of one blast and ported. When the ferryboat received this signal she stopped, and on getting a second signal of one blast and seeing the change of course, backed full speed astern and blew an alarm. The tug continued with unabated speed under her port helm until when just below Forty-Third street she starboarded so as to clear Pier 83 and crossed the bow of the ferryboat at a point about 100 feet from the end of that pier, breaking the ferryboat's forward rudder with her port quarter and sustaining some damage her-self.

The situation was clearly one of the starboard hand rule. The ferryboat was bound to keep out of the way and the tug to hold her course and speed. Articles 19 and 21 of the Inland Rules. It was quite natural for the ferryboat to ask permission to cross the tug's bow. On a strong ebb tide she would have difficulty in making her slip while the tug could very easily slow or stop. But upon receiving the second signal of one blast and seeing the tug sheering to starboard, the only way for the ferryboat to keep clear was by backing at full speed, as she did. The tug by porting violated article 21 at her peril. If instead of porting, and so bringing herself some 200 to 300 feet nearer the pier line, she had held her course as the law required, we think she would have passed clear under the ferryboat's stern, even if the ferryboat had stopped and backed just as she did. Of course, if, under such circumstances, the ferryboat had kept her speed, there could have been no collision.

The decree is affirmed, with interest and costs.